**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 14**

Docket Nos. SF-0752-14-0312-I-1
SF-0752-14-0317-I-1
SF-0752-14-0318-I-1
SF-0752-14-0319-I-1
SF-0752-13-3066-I-1

**NV24-KEYPORT2 et al.,**

**Appellants,**

**v.**

**Department of the Navy,**

**Agency.**

March 3, 2016

Wayne D. Patterson, Kristi L. Ackerman, Richard K. Schulgen, Aaron J. Clark, Christopher P. Haworth, Elisabeth Bankhead, Elizabeth A. Kerstetter, Karen F. Mills, Roger A. Gelbach, Wade A. Kempf, Corey M. Kopp, Deborah May Westerback, Gerry K. Austin, Leo J. Beer, Lucas P. Zahara, and Wayne A. Stowsand, pro se.

Matthew D. Dunand and Steven L. Seaton, Esquire, Bremerton, Washington, for the agency.

Shari L. Oehrle, Pensacola, Florida, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellants have filed petitions for review of the initial decisions, which upheld the furlough actions and determined that they did not prove any of their affirmative defenses. Because these appeals present similar issues, and to expedite their processing, we CONSOLIDATE them pursuant to 5 U.S.C. § 7701(f)(1) and 5 C.F.R. § 1201.36(a)-(b). For the following reasons, we AFFIRM the initial decisions AS MODIFIED by this Opinion and Order. We modify the initial decisions to supplement the administrative judge's conclusion that the furloughs promoted the efficiency of the service, and that the appellants did not prove their affirmative defenses of harmful procedural error and that the furloughs were not in accordance with law.[1]

## BACKGROUND

¶2      A number of similarly situated employees from the Naval Undersea Warfare Center (NUWC) Division Keyport appealed the agency's decision to furlough them for 6 days, between July and August 2013, and the appeals were consolidated. *E.g.*, *NV24-KEYPORT1 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0311-I-1, Consolidation Appeal File (NV24-KEYPORT1 CAF), Tabs 2, 12[2]; *NV24-KEYPORT2 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0312-I-1, Consolidation Appeal File (NV24-KEYPORT2 CAF), Tabs 2, 12; *NV24-KEYPORT4 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0317-I-1, Consolidation Appeal File (NV24-KEYPORT4 CAF),

---

[1] Our findings in this Opinion and Order apply only to Appellant Patterson and the appellants set forth in Appendices A-D, not to the appellants who were previously part of these consolidated groups but did not file petitions for review. *See Dye v. Department of the Army*, 121 M.S.P.R. 142, ¶ 1 n.2 (2014).

[2] Appellant Patterson's appeal was part of *NV24-KEYPORT1 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0311-I-1. Appellant Patterson was the only appellant from that consolidation to file a petition for review.

Tabs 2, 15; *NV24-KEYPORT5 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0318-I-1, Consolidation Appeal File (NV24-KEYPORT5 CAF), Tabs 2, 15; *NV24-KEYPORT6 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0319-I-1, Consolidation Appeal File (NV24-KEYPORT6 CAF), Tabs 2, 14. After holding a single 3-day hearing, the administrative judge issued one initial decision for each consolidated group that affirmed the furloughs and found that the appellants did not prove their affirmative defenses of harmful procedural error, a due process violation, or that the furloughs were not in accordance with law.[3] Hearing Transcript (HT); NV24-KEYPORT1 CAF, Tab 45, Initial Decision; NV24-KEYPORT2 CAF, Tab 45, Initial Decision (NV24-KEYPORT2 ID); NV24-KEYPORT4 CAF, Tab 48, Initial Decision; NV24-KEYPORT5 CAF, Tab 48, Initial Decision; NV24-KEYPORT6 CAF, Tab 45, Initial Decision.

¶3      The Board has received petitions for review from Appellant Patterson and the appellants listed in the attached appendices only. *E.g.*, *Austin v. Department of the Navy*, MSPB Docket No. SF-0752-13-2457-I-1, Petition for Review (*Austin* PFR) File, Tab 1.[4] The agency has filed responses to the petitions.[5] *NV24-KEYPORT2 v. Department of the Navy*, Petition for Review File, Tab 2; *Patterson v. Department of the Navy*, MSPB Docket No. SF-0752-13-3066-I-1,

---

[3] The administrative judge issued initial decisions on June 9 and June, 10, 2015.

[4] Each of the appellants listed in the appendices explicitly state that their respective petitions for review are "similar to the one filed by [Appellant] Gerry Austin" and each references the corresponding docket number for Appellant Austin's appeal. *E.g.*, *Ackerman v. Department of the Navy*, MSPB Docket No. SF-0752-13-3046-I-1, Petition for Review File, Tab 1 at 5. Appellant Patterson's petition for review does not contain such a statement, and his petition for review includes additional arguments. *Patterson v. Department of the Navy*, MSPB Docket No. SF-0752-13-3066-I-1, Petition for Review File, Tab 1.

[5] The agency filed one response in Appellant Patterson's appeal and one response to the other petitions.

Petition for Review (*Patterson* PFR) File, Tab 3. Appellants Austin and Patterson have filed reply briefs. *Austin* PFR File, Tab 2; *Patterson* PFR File, Tab 4.

## ANALYSIS

The furloughs promoted the efficiency of the service.

¶4 Under 5 U.S.C. §§ 7512(5) and 7513(a), an agency may furlough an employee for 30 days or less "only for such cause as will promote the efficiency of the service." *Naval Station Norfolk-Hearing 2 v. Department of the Navy*, 123 M.S.P.R. 144, ¶ 8 (2016). An agency meets its burden of proving that a furlough promotes the efficiency of the service by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner. *In re Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶ 14 (2014); *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 8 (2013). By arguing on review that NUWC Division Keyport had adequate funding to avoid the furloughs and that the agency improperly and inconsistently permitted overtime, we understand the appellants to be challenging the administrative judge's conclusion that the agency satisfied both parts of this test. *Austin* PFR File, Tab 1 at 10-13; NV24-KEYPORT2 ID at 3-8. We modify the initial decisions to supplement the administrative judge's analysis of these issues, but we are not persuaded that a different outcome is warranted.

> *The appellants' reliance on 10 U.S.C. § 129(e) and concomitant assertion that NUWC Division Keyport had adequate funds to avoid a furlough do not warrant a different outcome.*

¶5 The appellants appear to challenge the administrative judge's conclusion that the furloughs were a reasonable management solution to the financial

restrictions placed on the agency by arguing that (1) NUWC Division Keyport is a Major Range and Test Facility Base (MRTFB),[6] (2) pursuant to 10 U.S.C. § 129(e), the prohibition of certain civilian personnel management constraints "apply [to MRTFBs] at the installation level," (3) and the furloughs constituted an impermissible constraint because NUWC Division Keyport had sufficient funding to avoid a furlough. *Austin* PFR File, Tab 1 at 5-8, 14; *see* 10 U.S.C. § 129(e). The administrative judge did not mention or discuss subsection (e) of 10 U.S.C. § 129 or NUWC Division Keyport's status as an MRTFB, and we modify the initial decisions to discuss this statutory provision.

¶6    Subsection (a) of 10 U.S.C. § 129 requires the Department of Defense (DOD) to manage its civilian personnel "solely on the basis of" total force management policies and procedures described in 10 U.S.C. § 129a, workload, and "the funds made available to the department for such fiscal year."[7] Subsection (a) also states that the "management of such personnel in any fiscal year shall not be subject to any constraint or limitation in terms of man years, end strength, full-time equivalent positions, or maximum number of employees." [8] Similarly, subsection (b)(2) states that the number of, and the amount of funds available to be paid to, indirectly funded DOD Government employees[9] "may not

---

[6] As an MRTFB, NUWC Division Keyport is a nationally recognized testing and evaluation range for the Nanoose and Dabob Bay ranges. HT at 185-86, 435-36.

[7] 10 U.S.C. § 101(a)(6) defines "department," when used with respect to DOD, as "the executive part of the department, including the executive parts of the military departments, and all field headquarters, forces, reserve components, installations, activities, and functions under the control or supervision of the Secretary of Defense, including those of the military departments."

[8] The deciding official confirmed that a man year is "the amount of work expected to be done by one employee . . . [o]ver the . . . course of a year." HT at 64-65.

[9] Subsection (c) of 10 U.S.C. § 129 defines "indirectly funded Government employees" as DOD civilian employees who are employed by industrial-type activities, the MRTFB, or commercial-type activities described in 10 U.S.C. § 2208, and whose salaries and benefits are funded from sources other than appropriated funds.

be . . . managed on the basis of any constraint or limitation in terms of man years, end strength, full-time equivalent positions, or maximum number of employees." Subsection (e) states that these prohibitions apply to the MRTFB "at the installation level."

¶7        We have not found any precedent from the Board or the U.S. Court of Appeals for the Federal Circuit that discusses subsection (e) of 10 U.S.C. § 129. The parties did not cite to or discuss any legislative history of 10 U.S.C. § 129(e), and we have been unable to find any published remarks regarding subsection (e) to assist us in our resolution of this matter.  *See, e.g.*, National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, § 1603(2), 110 Stat. 2422 (1996).

¶8        Even if we assume for the purposes of our analysis that NUWC Division Keyport is an installation, there is no evidence that the furloughs constituted an improper constraint or limitation on the management of civilian personnel at that installation in violation of subsections (a) or (b) of 10 U.S.C. § 129.  The fact that the deciding official acknowledged that the furloughs ultimately restricted or limited the availability of man years, *Austin* PFR File, Tab 1 at 6 (citing HT at 64-65), does not necessitate a finding that the management of civilian personnel at the installation level was "subject to" or "managed on the basis of" a constraint or limitation in terms of man years.

¶9        We are also not persuaded by the appellants' assertion that the furloughs were an impermissible constraint because NUWC Division Keyport had adequate funding to avoid them.  The Board has held that, notwithstanding an appellant's assertion that the Department of the Navy (Navy) had adequate funding to avoid the furloughs, it was reasonable for DOD to consider its budget situation holistically, rather than isolating each individual military department's situation. *Yee v. Department of the Navy*, 121 M.S.P.R. 686, ¶ 14 (2014).  Relying on *Yee*, the Board subsequently upheld the furlough of a working capital fund employee even when the division in question had adequate funding to avoid a furlough.

*Einboden v. Department of the Navy*, 122 M.S.P.R. 302, ¶ 15, *aff'd*, 802 F.3d 1321 (Fed. Cir. 2015).  The appellants have not persuaded us that the Board's reasoning in *Yee* and *Einboden* should not apply to this matter, particularly since NUWC Division Keyport is a working capital funded agency. HT at 70-71; NV24-KEYPORT2 CAF, Tab 9 at 6.[10]  We therefore conclude that, notwithstanding the appellants' assertion that NUWC Division Keyport had adequate funding to avoid the furloughs, it was reasonable for DOD to consider its budget situation holistically, rather than isolating the situation of each individual Navy organization or component.  *See Einboden*, 122 M.S.P.R. 302, ¶ 15; *Yee*, 121 M.S.P.R. 686, ¶ 14.  The appellants do not challenge the administrative judge's conclusion that DOD had to make spending cuts required by sequestration, NV24-KEYPORT2 ID at 3, and we affirm her finding that the furloughs were a reasonable management solution to the financial restrictions placed on the agency.

*The agency used overtime properly and in a manner that was fair and even.*

¶10        An agency's decision to award certain employees overtime pay may be relevant to whether the agency applied the furlough uniformly and consistently. *Chandler*, 120 M.S.P.R. 163, ¶ 14.  Thus, if the agency used overtime payments to relieve certain employees but not others of the financial consequences of the furlough, this may be sufficient to show that the furlough did not meet the efficiency of the service standard.  *Id.*  The efficiency of the service standard encompasses issues relating to the uniform and consistent application of the furlough, including whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough

---

[10] The appellants assert on review that the Board's holding *Einboden* is distinguishable because NUWC Division Keyport is also an MRTFB.  *Austin* PFR File, Tab 1 at 8.  In the absence of any evidence that the agency, or NUWC Division Keyport in particular, managed its civilian personnel in violation of 10 U.S.C. § 129, this distinction does not warrant a different analysis or outcome.

without legitimate management reasons.  *Id.*, ¶ 9.  The agency must treat similar employees similarly and must justify any deviations with legitimate management reasons.  *Id.*, ¶ 8.

¶11        The agency's use of overtime during the relevant time period satisfies these standards.  For instance, there was consistent testimony from the deciding official and other witnesses that overtime was not provided to, nor withheld from, certain employees to offset or enhance the financial impacts of the furlough.  HT at 31, 90, 135, 166, 394, 422-23, 463.  The record reflects that the agency's use of overtime was largely due to completing mission-critical needs or tasks and often was approved for employees with specialized knowledge or skills.  *See, e.g.*, HT at 128-29 (explaining that the Mark 112 project was an expiring-funds project that was "Priority No. 3 by the technical project manager associated with this work"), 134 (asserting that employee 324 was the "only . . . person [with] the mathematical background in order to do this particular job"), 165 (stating that an employee who received overtime was the chief engineer of a division that provides test and evaluation systems and was "uniquely qualified to provide engineering technical analysis for the safe handling and lifting" of a mini-submarine, which was a high risk and high visibility project).  The agency's use of overtime in this manner is not a basis for invalidating the appellants' furloughs.  *See Einboden*, 802 F.3d at 1325 ("It is not our role to second guess agency decisions as to how to prioritize funding when faced with a budget shortfall."); *Kelly v. Department of the Army*, 121 M.S.P.R. 408, ¶ 13 (2014) (holding that an agency's decision to adopt a policy under which it permitted the use of overtime to meet mission-critical needs is a spending matter within the agency's sound discretion); *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 10 (2013) (stating that in determining whether the agency structured a furlough in a fair and even manner, the Board will not scrutinize an agency's decision in such a way that second-guesses the agency's assessment of its mission

requirements and priorities), *aff'd sub nom. Berlin v. Department of Labor*, 772 F.3d 890 (Fed. Cir. 2014).

¶12        The appellants argue on review that there was a "lack of uniformity or consistency across the command" regarding the use of overtime during the furlough period. *Austin* PFR File, Tab 1 at 10-11. They assert that Appellant Kerstetter, a mechanical engineer, was prohibited from working overtime during the furlough, whereas another mechanical engineer in the same job series, Kyle Morris,[11] was afforded greater opportunity and encouraged to work overtime during the furlough. *Id*. at 12. We modify the initial decisions to discuss this specific assertion, but we conclude that a different outcome is not warranted.

¶13        In evaluating whether individuals are similarly situated, it is appropriate to apply reduction-in-force competitive level principles. *Weathers v. Department of the Navy*, 121 M.S.P.R. 417, ¶ 8 (2014). Generally, a competitive area must be defined solely in terms of the agency's organizational unit(s) and geographical location. *Id.* The minimum competitive area is a subdivision of the agency under separate administration within the local commuting area. *Id.*; 5 C.F.R. § 351.402(b).

¶14        Even though Appellant Kerstetter and Mr. Morris were both mechanical engineers at NUWC Division Keyport, we conclude that they were not in the same competitive area. Appellant Kerstetter's furlough Standard Form 50-B (SF-50-B) reports that she worked in the Systems Acceptance and Operational Readiness Department, "USW Weapons" and Product Acceptance Division, and Production Acceptance and Test Branch. *Kerstetter v. Department of the Navy*, MSPB Docket No. SF-0752-13-2502-I-1, Initial Appeal File, Tab 10 at 5. Appellant Kerstetter testified that she worked in the Failure Analysis Lab in

---

[11] Mr. Morris was part of *NV24-KEYPORT5 v. Department of the Navy*, MSPB Docket No. SF-0752-14-0318-I-1, but he did not file a petition for review of the initial decision in that matter.

Code 222, whose primary role was to, among other things, "evaluate the failures in the fleet and examine material," research and development, and reverse engineering. HT at 454. By contrast, Mr. Morris's furlough SF-50-B states that he worked in the Maintenance, Engineering, and Industrial Operations Department, "Rapid Proto & Fabrication Tech" Division, and Applied Technology Branch. *Morris v. Department of the Navy*, MSPB Docket No. SF-0752-13-2505-I-1, Initial Appeal File, Tab 2 at 6. Mr. Morris testified that he worked in Code 321, which "makes parts and pieces for anybody and everybody." HT at 413-14. Because Appellant Kerstetter and Mr. Morris were assigned in different code sections and worked in different departments, divisions, and branches, we conclude that they are not in the same competitive area, and therefore they are not similarly situated. *See, e.g.*, *Rodgers v. Department of the Navy*, 122 M.S.P.R. 559, ¶ 15 (2015) (concluding that, even if the appellant performed similar duties as the attorneys assigned to the Norfolk Naval Shipyard, she was not similarly situated to them because they worked in a different subdivision of the agency under separate administration). Because Appellant Kerstetter and Mr. Morris were not similarly situated, the agency was not required to treat them similarly regarding the availability of overtime during the furlough period.

¶15    We also have considered the appellants' assertion that the administrative judge's conclusion that management justified any deviations with legitimate management reasons failed to consider the Memorandum of Agreement between agency managers and two unions. *Austin* PFR File, Tab 1 at 10, 12; *see* NV24-KEYPORT2 CAF, Tab 9, Exhibit H at 3 (stating that the division will not "use contract funding or premium pay (e.g., compensatory time or overtime) to offset lost time under [the] furlough"). The administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985)

(Table).  Moreover, the record reflects that the agency made a good faith effort to comply with both the letter and the spirit of the agreement through the establishment of goals for the use of overtime.  For example, because the furlough initially was expected to reduce the agency's normal hours by 20%, the agency established a corresponding goal that it would execute only 80% of the overtime hours that were executed during the fourth quarter of the prior fiscal year.  HT at 32-33, 81, 94-95, 125, 138-39, 156, 170, 253.  The agency's deliberate reduction of overtime hours in similar proportion to the reduction of hours due to the furlough appears inconsistent with the appellants' assertion that it was using overtime hours to offset furlough hours.[12]

¶16     For these reasons, we affirm the administrative judge's conclusion that the furloughs were a reasonable management solution to the financial restrictions placed on DOD, that it applied its determination as to which employees to furlough fairly and evenly, and that the furloughs promoted the efficiency of the service.

The appellants failed to prove their affirmative defenses.[13]

¶17     Under 5 U.S.C. § 7701(c)(2), the agency's decision may not be sustained if the appellants show harmful error in the application of the agency's procedures in arriving at such a decision or that the decision was not in accordance with law. The appellants bear the burden of proving their affirmative defenses by preponderant evidence.  5 C.F.R. § 1201.56(b)(2)(i)(C).

¶18     In the initial decisions, the administrative judge assumed (without deciding) that the agency committed a procedural error by constraining the

---

[12] Even if we considered these arguments as a claim of harmful procedural error, the appellants have not established that the agency committed any error for the reasons described herein.

[13] The appellants do not appear to challenge the administrative judge's conclusion that they did not prove their affirmative defense of a due process violation, NV24-KEYPORT2 ID at 8-9, and we affirm her decision in this regard.

deciding official's authority beyond the guidance provided by the Secretary of Defense, but found that the appellants "offered no evidence that the deciding official would have defied the wishes of higher-level agency management and canceled the furloughs if given the unfettered discretion to do so." NV24-KEYPORT2 ID at 9. The appellants assert on review that NUWC Division Keyport did not have a shortage of funds and the evidence supports the opposite conclusion as the one reached by the administrative judge. *Austin* PFR File, Tab-1 at 8-9. In support of this assertion, the appellants cite to the following evidence: (1) Program Manager N.P. testified that "[o]vertime and everything started ramping up" when the budget was signed in May 2013, HT at 439; (2) the agency's response to the union's request for information stated that it had "existing (and durable) workload demands to fully employ [more people than were currently staffed in June 2013]," *Austin v. Department of the Navy*, MSPB Docket No. SF-0752-13-2457-I-1, Initial Appeal File, Tab 1, Attachment 3; and (3) the undisputed fact that overtime was used before, during, and after the furlough, *e.g.*, NV24-KEYPORT2 CAF, Tab 11, Exhibits A-B. *Austin* PFR File, Tab 1 at 9. We modify the initial decisions to clarify that the appellants have not proven that the agency committed any procedural error.

¶19 The record reflects that the agency followed its own procedures during the furlough. The agency's procedures for the furlough delegated to deciding officials the authority to review employee replies and apply the approved categorical exceptions on a case-by-case basis. *See, e.g.*, Department of the Navy Administrative Record for FY 2013 Furlough Appeals, Part 1 at 12-18, 30-37, 49, 105-14, *available at* http://www.mspb.gov/furloughappeals/navy2013.htm; NV24-KEYPORT2 CAF, Tab 5 at 21-22; HT at 22-27. The appellants have not established that the agency failed to follow these procedures in handling their individual furloughs. Further, the appellants have not cited, and we are not aware of, any authority that gave the deciding official discretion to cancel the furloughs because there was no shortage of funds at NUWC Division Keyport. *See*

*Rodgers*, [122 M.S.P.R. 559](#), ¶ 11 (finding no support in the record for the proposition that the Navy's procedures for implementing the furlough granted individual deciding officials the independent authority to make organization-wide exceptions to the furlough). Thus, we find that the appellants failed to establish that any procedural error occurred.[14]

¶20    Regarding the affirmative defense that the furloughs were not in accordance with law, the appellants assert on review that the administrative judge improperly placed the burden on them to demonstrate that the furloughs were imposed to "meet an arbitrary man-year target," whereas the language in [10 U.S.C. § 129](#)(b)(2) only requires them to show a "constraint or limitation." *Austin* PFR File, Tab 1 at 6-7; NV24-KEYPORT2 ID at 8. This argument is unavailing. Rather, as discussed *supra* ¶¶ 8-9, we find that the furloughs were imposed due to sequestration and the resulting lack of funding, not one of the impermissible constraints described in [10 U.S.C. § 129](#). Because we find that the agency did not violate [10 U.S.C. § 129](#), we discern no error with the administrative judge's conclusion that the appellants did not prove this affirmative defense.

Appellant Patterson's additional arguments do not warrant a different outcome.

¶21    Appellant Patterson made the following additional assertions in his petition for review: (1) the majority of the case law cited by the administrative judge in the initial decision was issued after the record closed; (2) the new cases are distinguishable because they "lack the degree of evidence and testimony provided in this case"; and (3) unnamed electrical engineers were treated differently than others regarding the availability of overtime. *Patterson* PFR File, Tab 1 at 7, 9. These arguments are not persuasive.

---

[14] Accordingly, there is no need to analyze whether the appellants were harmed by any error.

¶22    The Board generally applies case law issued while an appeal is pending. *See, e.g.*, *Smith v. Merit Systems Protection Board*, 168 F.3d 1305, 1306 (Fed. Cir. 1999); *Nichols v. Department of Veterans Affairs*, 89 M.S.P.R. 554, ¶ 4 (2001); *Beck v. General Services Administration*, 86 M.S.P.R. 489, ¶ 12 (2000). Further, by filing a petition for review, Appellant Patterson was able to challenge the administrative judge's analysis, and thus, he was not harmed by the administrative judge's reliance on recent cases.[15]   We have considered the appellants' graphical data that was generated from information provided by the agency regarding overtime hours worked by employees before, during, and after the furlough.  NV24-KEYPORT2 CAF, Tab 11, Exhibits A-B.  Appellant Austin, who created the graphical data, acknowledged on cross examination that it does not show compensatory time or include all of the employees at NUWC Division Keyport.  HT at 326-27, 331-35.  Because of these limitations, the graphical data has little probative value.  Finally, Appellant Patterson failed to identify any electrical engineers by name, code section, or employee number, nor did he identify specific evidence that the administrative judge failed to analyze or improperly analyzed.  In the absence of such evidence or information, a different outcome is not warranted.  *See, e.g.*, *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980) (holding that the petitioning party must explain why the challenged factual determination is incorrect, and identify the specific evidence in the record that demonstrates the error); 5 C.F.R. § 1201.115(a)(2).

¶23    For these reasons, we affirm the initial decisions as modified by this Opinion and Order, still affirming the furlough actions.

---

[15] To the extent that Appellant Austin makes the same argument in his reply brief, *Austin* PFR File, Tab 2 at 6, we similarly conclude that he has not demonstrated any harm.

ORDER

¶24 This is the final decision of the Merit Systems Protection Board in these appeals. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANTS REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website

at   http://www.mspb.gov/probono   for   information   regarding   pro   bono representation for Merit Systems Protection Board appellants before the Federal Circuit.    The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

APPENDIX A


NV24-KEYPORT2

SF-0752-14-0312-I-1


Kristi L. Ackerman                              SF-0752-13-3046-I-1

Richard K. Schulgen                          SF-0752-13-3039-I-1

APPENDIX B

NV24-KEYPORT4
SF-0752-14-0317-I-1


| | |
|---|---|
| Aaron J. Clark | SF-0752-13-0911-I-1 |
| Christopher P. Haworth | SF-0752-13-4571-I-1 |
| Elisabeth Bankhead | SF-0752-13-1141-I-1 |

APPENDIX C

NV24-KEYPORT5
SF-0752-14-0318-I-1


Elizabeth A. Kerstetter                    SF-0752-13-2502-I-1

Karen F. Mills                             SF-0752-13-3022-I-1

Roger A. Gelbach                           SF-0752-13-2504-I-1

Wade A. Kempf                              SF-0752-13-2508-I-1

APPENDIX D

NV24-KEYPORT6
SF-0752-14-0319-I-1

| | |
|---|---|
| Corey M. Kopp | SF-0752-13-2442-I-1 |
| Deborah May Westerback | SF-0752-13-2515-I-1 |
| Gerry K. Austin | SF-0752-13-2457-I-1 |
| Leo J. Beer | SF-0752-13-2440-I-1 |
| Lucas P. Zahara | SF-0752-13-2460-I-1 |
| Wayne A. Stowsand | SF-0752-13-2479-I-1 |